## Commonwealth *v.* Dale, Appellant.

Submitted June 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Leslie Eugene Dale,* in propria persona, and *Theodore S. Danforth,* Public Defender, for appellant.

*Ronald L. Buckwalter,* First Assistant District Attorney, and *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH. J., February 27, 1975:

For the reasons given in Judge PRICE's opinion, appellant's conviction for larceny of a motor vehicle is affirmed and his convictions for burglary and larceny are reversed. However, where Judge PRICE would "grant a new trial on those charges [of burglary and larceny]," a majority of the court is of the opinion that appellant must be discharged.

Appellant filed two motions: a motion for new trial, and a motion in arrest of judgment.[1]  It is important to distinguish between these motions.

The motion for new trial alleged that the verdicts of guilty of burglary and larceny were "contrary to the evidence" or "contrary to the weight of the evidence." "Contrary" means "diametrically different . . . opposite in character or nature . . . mutually opposed . . . ." Webster's Third New International Dictionary 495 (1961).  Here, the evidence was not "opposed" to the finding of guilt but consistent with that finding.  The difficulty, as Judge PRICE's opinion shows, is that the evidence was insufficient to support the finding.  The motion for new trial was therefore properly denied.

The argument that the evidence was insufficient was made by the motion in arrest of judgment.  This was in accordance with the Act of June 15, 1951, P. L. 585, §1, 19 P.S. §871, which provides that "the defendant . . . may make a motion in arrest of judgment on the grounds that the evidence was insufficient to sustain the charge . . . ."  The Act goes on to provide that on such motion, "if the court, after consideration of the entire record, shall decide that there is not sufficient evidence to sustain the conviction, it shall forthwith discharge the defendant and dismiss the case."

A case similar to the present case, and illustrating the application of the Act of June 15, 1951, *supra*, is

---

[1] Appellant's written post-trial motions are inexplicably missing from the record. The docket, however, contains the notation, "July 3, 1972, Written motions in Arrest of Judgment and for a New Trial filed." The record of appellant's co-defendant's case does contain written motions, which were also filed on July 3. Since the notes of testimony for the joint trial were not transcribed until after that date, since both defendants were represented by lawyers from the same Public Defender's office, and since the co-defendant's motions are in the usual form, we shall proceed as Judge PRICE's opinion has, giving appellant the benefit of the doubt and assuming that his written motions were identical to his co-defendant's.

*Commonwealth v. Wright*, 449 Pa. 358, 296 A. 2d 746 (1972). There the issue was whether there was sufficient evidence to support a conviction for receiving stolen goods. This court affirmed *per curiam*, HOFFMAN, MONTGOMERY, and SPAULDING, JJ., dissenting, and the Supreme Court allowed an appeal. After concluding that the evidence was insufficient, the Supreme Court went on to hold as follows: "Recognizing its plight, the Commonwealth in its brief urges this Court, if relief is to be granted, to award a new trial and not arrest judgment. While it is most unfortunate the Commonwealth failed to offer all of the evidence in its possession necessary to establish the charges, this reason does not provide a justification for this Court to refuse the request of the appellant that he be discharged. Under the Act of 1951, June 15, P. L. 585, §1, 19 P.S. 871, where it is determined after a review of the entire record that the evidence is insufficient to sustain the charge, the trial court is mandated to discharge the defendant and dismiss the case. This act does not leave the remedy to the discretion of the court, but rather, directs the dismissal of the action and the discharge of the defendant. We are now in the position of reviewing the lower court's ruling in this regard and having determined that he should have found the evidence insufficient are merely directing what he should have done in the first instance. *See*, Commonwealth v. Bailey, *supra* [448 Pa. 224, 292 A. 2d 345 (1972)]." *Id.* at 361-362, 296 A. 2d at 747-748.[2]

---

[2] It may also be noted that the law is far from clear on whether, where the conviction has been reversed because of insufficient evidence, retrial impairs a defendant's right not to be placed in jeopardy twice. *Compare Bryan v. United States*, 338 U.S. 552 (1950) *with Sapir v. United States*, 348 U.S. 373 (1955) *and Forman v. United States*, 361 U.S. 416 (1960). *Cf. Commonwealth v. Garrett*, 229 Pa. Superior Ct. 459, 323 A. 2d 314 (1974) (SPAETH, J., concurring). *And see* Comment, Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence, 31 U. Chi. L. Rev. 364 (1964).

The judgment of sentence for larceny of a motor vehicle is affirmed; the judgments of sentence for burglary and larceny are reversed, and as to these charges, appellant is discharged.

———

CONCURRING AND DISSENTING OPINION BY PRICE, J.:

This appeal comes before the court on a denial of a motion for a new trial. Appellant was convicted in a jury trial of larceny of a motor vehicle, burglary, and larceny. Appellant contends there was insufficient evidence upon which to find him guilty. I agree with the majority that there was ample evidence of the larceny of the motor vehicle to affirm that conviction. I also agree that the verdict for burglary and larceny was contrary to the weight of the evidence, and that those convictions should be reversed. However, I would order a new trial on these charges and must, therefore, dissent from the majority order which grants appellant a discharge. I have been unable to find appellant's posttrial motions in the record. However, an examination of co-defendant's written motions which are available lists the following reasons for a new trial: (1) the verdict is contrary to the evidence; (2) the verdict is contrary to the weight of the evidence; and (3) the verdict is contrary to the law. Co-defendant's motions also list as support for a motion in arrest of judgment, insufficient evidence to sustain the verdict. Since both defendants were represented by the same Public Defender's Office, I shall assume appellant's post-trial motions were identical to his co-defendant's.

I am well aware that in a situation where an appellant makes only a motion in arrest of judgment, the court has no discretion to award a new trial but must arrest judgment if there are sufficient grounds. Act of June 15, 1951, P. L. 585, §1 (19 P.S. §871). However, that is not the situation in the present case. Appellant has made motions both in arrest of judgment *and* for a

new trial. I do not interpret 19 P.S. §871 to mean that when a defendant makes several motions, including a motion in arrest of judgment, the court can only grant the motion in arrest of judgment.

In addition, the majority, citing *Webster's Third New International Dictionary* (1961), seeks to make a distinction between a verdict failing because it is contrary to the evidence or contrary to the weight of the evidence and a verdict failing for insufficient evidence. I believe this is a distinction without an operative difference. *Black's Law Dictionary* 398 (4th ed. rev. 1968) defines "contrary to the evidence" as "against the evidence—against the weight of the evidence," and "weight of the evidence" means "[t]he balance of preponderance of evidence; the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Id.* at 1765. "Insufficiency of evidence to support verdict" is defined as ". . . some evidence, but not enough in light of the evidence to the contrary to support a verdict." *Id.* at 942.

The various terms are interrelated and a consideration of one necessarily involves a consideration of the others. As the facts discussed later in this opinion indicate, the inclination of the greater amount of credible evidence offered at the trial did not support the conviction for burglary and larceny of Flame-Rite. I believe it is incorrect to state that "the evidence was not 'opposed' to the finding of guilt but consistent with that finding." In fact, there was both evidence that would tend to establish guilt *and* evidence that tended to prove innocence. Where there is evidence to sustain the verdict, the court may not arrest judgment, but it may grant a new trial if the verdict is against the weight of the evidence. *Commonwealth v. Harbaugh*, 197 Pa. Superior Ct. 587, 179 A. 2d 656 (1962) ; *Commonwealth v. Coyle*, 190 Pa. Superior Ct. 509, 154 A. 2d 412 (1959).

The testimony reveals that two Pennsylvania State Policemen, in the early morning hours of October 25, 1971, stopped a car driven by Richard Leroy Cox in which appellant was a passenger. The police first noticed the car as it approached with its headlights on high beam. Intending to issue a warning, the police turned their patrol car around and followed the car driven by Cox. Cox attempted to evade the officers, and a high speed chase ensued during which the police officers used the patrol car's siren and flashing warning lights.

Cox had a valid operator's license, but neither he nor appellant could tell the troopers to whom the car was registered. They told the officers a friend had loaned them the car earlier, but they could not remember the friend's name. In fact, the car had been removed from the owner's premises without her consent sometime between 12:15 a.m. and 12:50 a.m., October 25, 1971. The police stopped the car with appellant in it at 12:50 a.m. on that date.

That same morning, the police also investigated a burglary at Flame-Rite Gas, Inc. (Flame-Rite), a property approximately two and one-tenth miles from the location from which the car had been stolen. Flame-Rite had been burglarized sometime between noon, October 23, 1971, and 3:00 a.m., October 25, 1971. Glass in two buildings had been broken, a lock on an exterior gate had been removed, and a triangular opening had been cut in a galvanized iron fence which surrounded the property. The opening was approximately three or four feet at the base and about three feet-six inches in height. There were drops, appearing to be blood, inside one of the buildings. There were also bloodstained towels lying on the floor. A screwdriver, a coil of copper tubing, a number of keys to the company vehicles, and paper towels had been taken. A footprint was ob-

served at the hole in the fence, and a cast of the print was made and admitted into evidence.

Appellant's shoe, which had mud on it, had similarities to the cast of footprint found at Flame-Rite. In addition, when appellant was stopped in the stolen car by the police he had a cut on his arm, described by the police officer as a "deep cut," "a very bad cut." The cut had clotted and was not then bleeding profusely. Appellant told the police he had been cut in a knife fight in the City of Lancaster and that he and Cox were going to a hospital.

The lower court judge charged the jury that the possession of recently stolen property raises an inference that the possessor was the thief. The court further charged that this was merely an inference and not a rebuttable presumption, and that no burden was shifted to the defendant to prove his innocence. The jury could accept or reject the inference. Although in this case the charge was proper and the inference valid, the matter of drawing inferences from possession of recently stolen property needs clarification.

In the past, the unexplained possession of recently stolen goods raised the presumption that the possessor was guilty of receiving stolen property. The Pennsylvania Supreme Court, following the rationale of *Leary v. United States,* 395 U.S. 6 (1969), and *Turner v. United States,* 396 U.S. 398 (1970), abandoned the continued use of this presumption in *Commonwealth v. Owens,* 441 Pa. 318, 271 A. 2d 230 (1970). However, our Supreme Court, in the later case of *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A. 2d 727 (1972), re-examined possession of recently stolen property and determined that a jury could infer guilt not only for receiving stolen property but for burglary and larceny as well. The court stressed at length that it was considering not a *presumption* but an *inference.* With this point as the

guiding light, the court distinguished *Owens,* and discussed all aspects of the inference.

When examining the conclusion drawn from the inference, the court will apply the "more-likely-than-not-test;" i.e., is the conclusion more likely than not to flow from the proven facts on which it is made to depend. To determine if the inference is valid, the court will apply certain criteria: the lapse of time between the crime and the discovery of the property; the type and kind of property; the amount and volume of the property; and the ease in which it may be assimilated into trade channels.

The *Shaffer* criteria have since been applied to numerous cases dealing with larceny and/or receiving stolen property.[1] The criteria are used both to support convictions and to distinguish factual situations wherein the inference is invalid. The decisions since *Shaffer* have, however, narrowed the application of the inference and have by implication restricted its use to the clearest, most obvious situations.

The most recent case to address itself to the status of the inference is *Commonwealth v. Turner,* 456 Pa. 116, 317 A. 2d 298 (1974). The Pennsylvania Supreme Court there felt that the conviction was based too heavily on the inference although the other evidence admitted was sufficient alone to support the guilty verdict. The concern was that this over reliance on the inference would cause it to develop into an iron clad rule of law that would overshadow other evidence. As each case is different and must be decided on its own facts, earlier precedent is of little value and so, standardization of the inference and its application is not possible.

---

[1] See *Commonwealth v. Turner,* 456 Pa. 116, 317 A. 2d 298 (1974) ; *Commonwealth v. Allen,* 227 Pa. Superior Ct. 157, 324 A. 2d 437 (1974) ; *Commonwealth v. McFarland,* 452 Pa. 435, 308 A. 2d 592 (1973) ; *Commonwealth v. Henderson,* 451 Pa. 452, 304 A. 2d 154 (1973).

While the court in *Turner, supra,* is obviously concerned with over extension of the application of the inference, it does not overrule *Shaffer.* In the proper limited case, under the correct factual setting, guilt may still be inferred.

The case before us on larceny of a motor vehicle is exactly such a case. Appellant and Cox were stopped in the automobile approximately 35 minutes after the owner last observed the car in her driveway. The theft took place late at night, 12:15 a.m. or later. Appellant could not tell police who owned the car, and although he said a friend had loaned it to him earlier, he could not remember the friend's name. Appellant's statement to the police that a friend had loaned him the car earlier in the evening is completely at odds with the true owner's statement that the car was at her home all day and that she last saw it in her driveway at 12:15 a.m., the morning it was stolen. Under the total circumstances presented by the Commonwealth's case, there was adequate evidence for the jury to conclude that appellant had stolen the car.

I do not view the conviction for burglary and larceny of Flame-Rite in the same certain light. The Commonwealth's evidence against appellant was the cast of the footprint found at the scene of the crime, the blood found on the floor and towels coupled with the cut on appellant's arm, and a car stolen two and one-tenth miles from the scene. Although the police expert testified that there were similarities between the footprint found and appellant's shoe, there were also dissimilarities and the police could not make a positive comparison.[2] In addition, the mere fact that appellant had a cut on his arm and blood was found at the scene of the

---

[2] Although samples of the mud found on appellant's shoe and the mud at the scene of the crime were taken (NT 115) the results of any analysis that might have been made were not offered into evidence.

burglary, without more, is not enough to place appellant at the scene and support a conclusion that appellant committed the crime.[3]

There was no evidence that directly linked appellant to the burglary and larceny of Flame-Rite.   There were no identifiable fingerprints found at the scene and none of the stolen items were found on appellant, on his companion, or in the car.   Also, although it was established that heavy wire cutters were needed to cut through the fence, no such tool was found on appellant or in the car. The testimony that the car was stolen from a location two and one-tenth miles from Flame-Rite merely indicates that appellant was in the very general area between 12:15 a.m. and 12:50 a.m.   Since there was no evidence pinpointing this time to the Flame-Rite incident, even this general information is not helpful. While the act of fleeing from the police when they attempted to stop the car in which appellant and Cox were riding indicates that appellant participated in the car theft, it does not equate to knowledge of the burglary and larceny of Flame-Rite.   The record thus indicates that there was evidence both for and against appellant.

The grant of a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court.   *Commonwealth v. Zapata,* 447 Pa. 322, 290 A. 2d 114 (1972) ; *Commonwealth v. James,* 197 Pa. Superior Ct. 110, 177 A. 2d 11 (1962).   In reviewing this discretion, the appellate court must examine the findings of the jury and determine if the record supports those findings.   *Commonwealth v. Zapata, supra; Commonwealth v. Hayes,* 205 Pa. Superior Ct. 338, 209 A. 2d 38 (1965).   Even when accepting as true all the evidence and all the rea-

---

[3] The police analyzed the blood found at the scene of the crime. (NT 71) However, there were no comparisons of the blood at the scene and appellant's blood type offered at trial.

sonable inferences therefrom, upon which if believed the jury could properly have based its verdict, *Commonwealth v. Blevins,* 453 Pa. 481, 309 A. 2d 421 (1973), *Commonwealth v. Dawkins,* 227 Pa. Superior Ct. 558, 322 A. 2d 715 (1974), I do not find the evidence to be sufficient in weight to support beyond a reasonable doubt a guilty verdict for burglary and larceny. The lower court should have granted appellant's motion for a new trial.

I would, therefore, affirm the lower court conviction for larceny of a motor vehicle, and reverse the conviction for burglary and larceny and grant a new trial on those charges.

WATKINS, P. J., and VAN DER VOORT, J., join in this concurring and dissenting opinion.