396 A.2d 463

COMMONWEALTH of Pennsylvania

v.

**Michael LONG, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1977.

Decided Dec. 28, 1978.

Paulette J. Balogh, Assistant Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

The six Judges who decided this appeal being equally divided, the judgment of sentence is affirmed.

VAN der VOORT, J., files an opinion in support of affirmance in which CERCONE and PRICE, JJ., join.

SPAETH, J., files an opinion in support of reversal in which JACOBS, President Judge, and HOFFMAN, J., join.

The above case was decided prior to the retirement of HOFFMAN, J.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

VAN der VOORT, Judge:

The appellant, Michael Long, appeals to this Court following his conviction, denial of post-trial motions, and sentencing on a charge of possession with intent to deliver a controlled substance. He argues on appeal that the lower court erred in denying his request to suppress evidence seized from the trunk of his automobile.

The record shows that officers in a patrol car in a high crime area noticed an extensively damaged automobile parked near a social club, in the early morning hours on May 5, 1975. Among other problems, the officers noticed that the car had no right front headlight. The officers next saw the same auto about one half hour later, as it proceeded through an intersection without coming to a complete stop, despite a stop sign. As they followed the car, the officers noticed that it was being driven erratically, waving from side to side on the road. The car proceeded several blocks and then pulled over to the curb and parked. The police car parked behind the other auto.

A passenger, one Jessee C. Booker, exited the car from the right side, did one complete turn, then knelt with his hands directly in front of him at or below the door of the auto. He appeared to speak to the persons still in the auto. He then turned and started to walk towards a nearby house. He stopped at the request of the officers. The appellant, who was the driver of the car, and a second passenger were asked to get out of the auto by the officers, and did so, both by the right doors of the car. Other officers had arrived at the scene, and noted a revolver lying in the street by the area where Booker had knelt.

The appellant appeared to be intoxicated and could not furnish the officers with a driver's license. He was placed under arrest. Just then, another officer noticed another object on the ground, close to where the gun had been found. That object turned out to be a clear plastic bag containing 22 separate tin foil wrappings, which were thereafter discovered to each contain a "half spoon" of heroin.

One of the officers then asked the appellant whether he would give the officer permission to inspect the trunk of his car, or whether the officer should secure a warrant. The appellant told the officer that his trunk could be searched. When opened, the trunk revealed a large quantity of illicit drugs, including both heroin and marijuana.

Prior to trial, appellant moved to suppress the evidence consisting of the drugs found in the trunk of his care. The lower court stated during the course of the trial that it could not find that there was valid consent for the search, considering the possible inebriation of the appellant, and the number of officers present at the time the trunk was searched. Despite the lack of consent, the lower court concluded that there existed probable cause for the search, without a warrant, considering all of the circumstances of the case. We agree with the conclusion reached by the lower court.

It has been held that to justify the warrantless search of a movable vehicle, the officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle, or that there are weapons therein which are accessible to the occupants. *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972); *Commonwealth v. Lewis*, 442 Pa. 98, 275 A.2d 51 (1971). In the instant case, several of those standards were satisfied. Officers searched the trunk of the car during the middle of the night as it was parked in a high crime area. The occupants of the car had already been found in the posses-

sion of illicit narcotics and a loaded weapon. The driver (appellant), could not produce any ownership card for the vehicle, which was badly damaged and lacked proper lights. In light of all of these facts, the police clearly had probable cause to believe that a felony was committed by the occupants of the vehicle and that it was being used in the furtherance of other felonious activities. From the quantity of drugs found abandoned by the side of the auto, it could have been reasonably assumed that the vehicle was being used for the transportation of controlled substances for sales. We find the search of the trunk, especially in the high crime area in the middle of the night, to have been proper in these circumstances.

We would affirm.

CERCONE and PRICE, JJ., join in this opinion in support of affirmance.

## OPINION IN SUPPORT OF REVERSAL

SPAETH, Judge:

Appellant was convicted of possession with intent to deliver a controlled substance. (Demurrers were sustained to charges of violating the Motor Vehicle Code and carrying a firearm without a license.) However, the lower court granted appellant's motion for a new trial. Before the second trial appellant filed a motion to suppress certain evidence. The motion was denied, and appellant was once again found guilty. On this appeal he contends that the lower court erred in denying his motion to suppress.

The relevant testimony was to the following effect. On May 5, 1975, at about 1:30 a. m., while on patrol in a "high crime area," Sergeant Lucas and two other police officers saw a damaged car (no front headlight) drive past a stop sign. The officers followed the car and observed that it was weaving from one side of the road to the other. Four or five blocks later the car stopped by the side of the road, and the police stopped their car behind it. One of the two passengers got out of the passenger side of the car, did a complete turn, and knelt down by the passenger window

with his hand in front of his body. N.T. 22–23. The officers alighted, and one stopped one of the passengers, who was walking away from the car. Sergeant Lucas asked appellant, who was the driver, to alight, and when he did so, the sergeant noted that he smelled of alcohol. When appellant was unable to produce either a driver's license or a car registration, he was placed under arrest. While this was occurring, the passengers were patted down and one officer saw a shiny object about three or four inches under the car, beneath the passenger door. The officer retrieved the object and found that it was a gun. One of the other officers bent down, and next to where the gun had been, he found a clear plastic bag containing twenty-two silver wrappings, which were later determined to contain heroin. A search of the car ensued, and in the trunk the police found about fifteen pounds of marijuana and fifty-four packets of heroin. It is the contraband found in the trunk that appellant sought to suppress.[1]

"A warrantless search of an automobile is proper if it is incident to an arrest or if there is probable cause to believe that the automobile contains evidence that could be removed or destroyed before a warrant is obtained. *Chimel v. Cali-*

1. Sergeant Lucas testified that he "told Mr. Long was there a possibility I would look into his trunk or should I go get a warrant," N.T. 30–31, and that appellant told him to look in the trunk if he wanted to.

The question whether consent to a search is in fact voluntary or is the product of duress or coercion, express or implied, is a question of fact to be determined from all the circumstances. *Schneckloth v. Bustamonte,* [412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)]; *People v. Michael,* 45 Cal.2d 751, 753, 290 P.2d 852, 854 (1955). When the prosecution seeks to rely upon consent, it has the burden of proving that the consent was in fact freely given, *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 . . . [(1968)]; *Commonwealth v. Davenport,* 453 Pa. 235, 308 A.2d 85 (1973), and the proof must be by clear and positive testimony, *Judd v. United States,* 89 U.S.App.D.C. 64, 190 F.2d 649 (1951).

*Commonwealth v. Kelly,* 235 Pa.Super. 299, 308, 341 A.2d 141, 146 (1975) (Dissenting Opinion).

Here, the Commonwealth did not attempt to justify the search on the basis of consent, and the lower court specifically found that there was no valid consent to the search. N.T. 44.

*fornia,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)." *Commonwealth v. Ceravolo,* 224 Pa.Super. 464, 465, 307 A.2d 288, 289 (1973).

Initially the search of the car here might appear proper as incident to a lawful arrest, but it must be remembered that the scope of such a search is limited. *Chimel v. California, supra.* "The reason a search incident to arrest is permitted is to protect the safety of the officer and to prevent the destruction of any evidence. It follows that the boundaries of the search should be limited to those areas accessible to the suspect while in the custody of the officer." *Commonwealth v. Ceravolo, supra,* 224 Pa.Super. at 466, 307 A.2d at 289. Here, when appellant was arrested, he and his companions had already been patted down (the officer testified that this was his standard practice at such an hour, in such an area, N.T. 37–38) and were outside of their car, which had only one operable door (on the passenger's side). Assuming, without deciding, that the search of the inside of the car was proper, the search of the locked trunk was not, for the trunk was not an "area[ ] accessible to the suspect while in the custody of the officer." *Id.;* and *see Commonwealth v. Burgos,* 223 Pa.Super. 325, 299 A.2d 34 (1972) (search not justified as incident to arrest when search made while suspect standing between his car and police car).

Nor was the search of the trunk proper on the theory that the police had probable cause to believe that the car contained contraband that could be removed or destroyed before a warrant was obtained, for the police did not have such probable cause. The fact that the police found a gun and a bag of heroin under the car, evidently placed there by the passenger as he left the car and knelt next to the door, did not provide probable cause to believe that there would be additional contraband in the trunk. To establish probable cause there must be evidence of a nexus between the criminal activity to be investigated and the area to be searched. *See Commonwealth v. White,* 371 N.E.2d 777 (Mass., 1977). Here, the activity to be investigated was the passenger's possession of contraband. There was no evidence of a nexus between this activity and the trunk of the car. The officers'

observation that the passenger, when outside the car, attempted to dispose of contraband, was no basis for supposing that the passenger had any control of or access to the trunk of the car, so as to suggest that since contraband was found in his possession outside the car, more might be found inside the trunk.

The absence of the requisite nexus further becomes apparent when the facts of this case are compared with those in *Commonwealth v. Stoner*, 236 Pa.Super. 161, 344 A.2d 633 (1975). In *Stoner*, a car was stopped for a traffic violation. When a passenger opened the glove compartment to take out the car registration, a pistol fell out. The occupants were ordered out of the car, and, as the "frisk" yielded several other weapons, were arrested. The police officer returned to the car to obtain the pistol and car title, and as he reached in to the car he "noted a very distinct odor of marijuana." He "testified that he was very familiar with marijuana, and although he saw numerous marijuana seeds and leaves on the floor, seats, and clothing in the car, he was certain that the odor was too strong to be coming from the small amount of the drug he could see." *Id.*, 236 Pa.Super. at 163, 344 A.2d at 634. Thereupon, the trunk of the car was searched and five burlap bags of marijuana were discovered. This court found that the odor established probable cause for the search: The officer could see that there was no marijuana in the passenger compartment; he could also see from the seeds and leaves in the compartment that the occupants of the car had been handling marijuana; from the odor he knew that *somewhere* in the car, *other than* in the passenger compartment, there must be marijuana. Thus, the requisite nexus between the criminal activity being investigated and the area to be searched—the trunk of the car—was shown. Here there was no comparable justification.

The judgment of sentence should be reversed and the case remanded for a new trial.

JACOBS, President Judge, and HOFFMAN, J., join in this opinion.